**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| LANNETTE SCHNEEBERG also known as LANNETTE M. JORDAN, an individual, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 24-cv-00219-SEH-MTS |
| AMERICAN AIRLINES, INC., and TRANSPORT WORKERS UNION OF AMERICA AFL-CIO LOCAL 514, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT AMERICAN AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Respectfully Submitted,

*/s/ Hayley N. Stephens*
David R. Cordell, OBA #11272
Hayley N. Stephens, OBA #32515
Ashlyn Frix, OBA #35605
CONNER & WINTERS, LLP
4100 First Place Tower
15 East Fifth Street
Tulsa, OK 74103
(918) 586-5711
dcordell@cwlaw.com
hstephens@cwlaw.com
afrix@cwlaw.com

*Attorneys for American Airlines, Inc.*

September 4, 2025

## TABLE OF CONTENTS

I.    STATEMENT OF THE CASE ................................................................1

II.   STATEMENT OF UNDISPUTED MATERIAL FACTS ("UMF"s) ............................4

    A.    Plaintiff's Disparate Treatment Claim ..................................................4
        i.    *Background* ...............................................................4
        ii.   *American Airlines' Had a Legitimate, Non-Discriminatory Reason to Demote Plaintiff.* .............................6
        iii.  *Plaintiff's Disparate Treatment Claim Has No Merit.* .........8
        iv.   *The Individuals Plaintiff Has Identified are Not Similarly Situated to Her.* .............................9

    B.    Plaintiff's Hostile Work Environment Claim Based on Alleged Conduct by Stearns. .........................10
        i.    *Stearns' Alleged Conduct was Neither Based on Plaintiff's Sex Nor Severe or Pervasive.* .............10
        ii.   *American Airlines Exercised Reasonable Care to Prevent and Promptly Correct Any Alleged Sexual Harassment or Hostile Work Environment.* ...............................12
        iii.  *Plaintiff Unreasonably Failed to Take Advantage of Any Preventative or Corrective Opportunities.* .........12
        iv.   *Plaintiff's Work Environment is Not Abusive.* .................12

III.  ARGUMENT AND AUTHORITIES ......................................................12

    A.    The Standard for Summary Judgment ...................................................12

    B.    Plaintiff's Disparate Treatment Claim Fails as a Matter of Law. ...............13
        i.    *Plaintiff Cannot Establish the Third or Fourth Elements of a Prima Facie Case.* .............................14
            a.    Plaintiff was not qualified for the general AMT Crew Chief position. .........................14
            b.    Plaintiff cannot establish she was treated less favorably than others in her position. ...........15
        ii.   *American Airlines Has Articulated a Legitimate, Nondiscriminatory Reason for Its Action.* .............16
        iii.  *Plaintiff Cannot Show Pretext.* .....................................17
            a.    Plaintiff has not identified any similarly situated employees. .....................................18
            b.    Plaintiff's subjective beliefs as to her job performance are insufficient. .....................19

**C.**    **Plaintiff's Hostile Work Environment Claim Fails as a Matter of Law.**.................................................................................................................20

    *i.*    ***Plaintiff's Hostile Work Environment Claim Fails Because the Alleged Conduct was Not Based on Sex.***...............................21

    *ii.*    ***Plaintiff's Hostile Work Environment Claim Fails Because the Alleged Conduct Was Neither Severe nor Pervasive.*** .......................22

        **a.**    **The complained of conduct was not pervasive.**.........................22

        **b.**    **The complained of conduct was not severe.**...............................24

    *iii.*    ***Plaintiff's Hostile Work Environment Claim Fails Due to American Airlines' Faragher-Ellerth Defense.*** .......................................24

**CONCLUSION** ............................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136 (10th Cir. 2008). ............. 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 13

*Aramburu v. Boeing Co.*, 112 F.3d 1398 (10th Cir. 1997) ............................................ 18

*Bacchus Indus., Inc. v. Arvin Indus.*, 939 F.2d 887 (10th Cir. 1991). ............................ 13

*Bennett v. Windstream Comm'cns, Inc.*, 30 F. Supp. 3d 1243 (N.D. Okla. 2014) 13, 14, 15, 16, 17

*Branson v. Price River Coal Co.*, 853 F.2d 768 (10th Cir. 1988) ........................... 17, 19

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).......................................... 25

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)............................................... 13

*Conatzer v. Medical Professional Bldg. Servs., Inc.*, 255 F.Supp.2d 1259 (N.D. Okla.
2003) ............................................................................................. 25

*Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189 (10th Cir. 2011) ............................. 17

*Faragher v. City of Boca Raton*, 524 U.S 775 (1998) ......................................... 22, 25

*Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202 (10th Cir. 2022)........................... 24

*Fuller v. Seagat Tech., LLC*, 651 F. Supp. 2d 1233 (D. Colo. 2009) ........................... 19

*Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210 (10th Cir. 2002)............................... 16

*Gerovic v. City and Cty. of Denver*, No. 22-1148, 2023 WL 2293518 (10th Cir. Mar. 1,
2023) (unpublished).......................................................................... 17, 18, 19

*Gross v. Burggraf Constr. Co.*, 53 F.3d 1531 (10th Cir. 1995) .................................... 22

*Harsco Corp. v. Renner*, 475 F.3d 1179 (10th Cir. 2007) ......................................... 21

*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220 (10th Cir. 2000)....................... 18

*Lobato v. New Mexico Env't Dept.*, 733 F.3d 1283 (10th Cir. 2013) ............................. 17

*Mauldin v. Driscoll*, 136 F.4th 984 (10th Cir. 2025)............................................... 17

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)....................................... 13, 16

*McGowan v. City of Eufala*, 472 F.3d 736 (10th Cir. 2006) ....................................... 18

*Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164 (10th Cir. 2006)................... 19

*Morgan v. Hilti, Inc.*, 108 F.3d 1319 (10th Cir. 1997) ......................................... 14, 17

*Morris v. City of Colo. Springs*, 666 F.3d 654 (10th Cir. 2012)............................... 22, 24

*Overfield v. Kansas*, No. 23-3057, 2024 WL 1611473 (10th Cir. Apr. 15, 2024)................ 18

*Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257 (10th Cir. 1998).............. 22, 23

*Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052 (10th Cir. 2009) ........................... 13

*Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355 (10th Cir. 1997) ........................... 23, 24

*Texas Dep't. of Cmty. Affs. v. Burdine*, 450 U.S. 248 (1981) .................................... 14

*Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 484 (10th Cir. 1995) ................................ 13

*Tilghman v. Kirby*, No. CIV-13-73-D, 2015 WL 5472498 (W.D. Okla. Sept. 16, 2015)............. 21

*Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009) ..................... 13, 14

*Xu v. Denver Pub. Schs., Sch. Dist. No. 1*, No. 23-1079, 2024 WL 448290 (10th Cir.,
Feb. 6, 2024) .................................................................................... 19

**Statutes**

Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §2000e
*et seq.* ............................................................................................. 1

**Rules**

LCvR 56.1.......................................................................................... 1, 4

Defendant American Airlines, Inc. ("American Airlines"), pursuant to Federal Rule of Civil Procedure 56 and LCvR 56.1, moves the Court for an order granting summary judgment in favor of American Airlines and against Plaintiff Lannette Schneeberg ("Plaintiff") on her claims for: (1) discrimination based upon sex (female) for "demoting" her in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §2000e *et seq.* and (2) hostile work environment based upon sex (female) in violation of Title VII.[1]

## I.    STATEMENT OF THE CASE

Plaintiff is employed by American Airlines at its Tulsa, Oklahoma maintenance base as an Aviation Maintenance Technician ("AMT"). She is a member of the TWU/IAM Airline Mechanical & Related Employee Association (the "Union"), with whom American Airlines has entered into a collective bargaining agreement, dated March 26, 2020 (the "CBA"). Accordingly, the terms and conditions of Plaintiff's employment are governed by the CBA.

In early 2022, Plaintiff bid for a general AMT Crew Chief position. On April 4, 2022, as the most senior eligible employee, Plaintiff was awarded the position and was assigned to Hangar 6. The CBA provides that "[e]mployees first awarded an AMT vacancy shall hold the job on a trial basis for a period of ninety (90) work days, excluding all classroom training, in order to demonstrate their ability to perform the required work." [Exhibit 2 CBA at 47]. The CBA further

---

[1] Schneeberg's Amended Complaint is somewhat confusing with regard to her claims. She asserts a single cause of action against American Airlines for violation of Title VII "in the nature of sex-based discrimination." [Doc. 22 at 7-8]. However, she also asserts that, as a result of American Airlines' allegedly discriminatory conduct, she "was harassed, received unfavorable evaluations, was wrongfully demoted, and her experience in a hostile work environment resulted in Schneeberg experiencing severe emotional distress." For the purpose of disposing of *all* of Schneeberg's claims, American Airlines will construe Schneeberg's Amended Complaint broadly as asserting two distinct claims: (1) based on the alleged "demotion" (the disparate treatment claim); and (2) based on the alleged "hostile work environment" (the hostile work environment claim).

provides that all employees first awarded an AMT vacancy will have their performance evaluated prior to the last day of their trial period. [*Id.*] If an employee fails to meet the performance expectations, he or she is to be returned to his or her previous bid area and shift. [*Id.*] As the CBA does not require evaluations to be conducted via any particular means, supervisors observing trial Crew Chiefs typically only complete written evaluations for employees exhibiting performance issues–the purpose being to allow the employee(s) an opportunity to improve.

Several weeks into Plaintiff's Crew Chief trial period, Plaintiff bid for (and was awarded) a day-shift position in Hangar 5. Once in Hangar 5, Plaintiff began reporting to Production Supervisors Darrell Chance ("Chance") and Rich Orcholski ("Orcholski"). Chance, Orcholski, and their managers in Hangar 5 including but not limited to Senior Manager of Shared Services, Michael Stearns ("Stearns"), soon noticed Plaintiff's behavior was inconsistent with that expected of Crew Chiefs. Plaintiff was frequently outside of her work area, was late to work on multiple occasions, and unprepared for the daily turnover meetings during which Crew Chiefs are expected to know the status of the aircraft and the scope of work their crew is to perform during their shift.

On June 26, 2022, Plaintiff was given a written evaluation identifying numerous performance issues. Plaintiff did not dispute the contents of the evaluation and admits the issues described therein were accurate. As Plaintiff's Crew Chief trial period approached its end, Chance and Orcholski remained concerned that Plaintiff was still struggling to grasp the scope of the Crew Chief role and still lacked necessary technical knowledge regarding the flow of the aircraft. On July 28, 2022, Plaintiff received a second written evaluation. The second evaluation noted many of the same issues identified in the prior evaluation, and, consistent with the CBA, further advised Plaintiff that she would be returned to her previous bid area.

Plaintiff subsequently filed an internal Ethics Point complaint regarding her demotion in which she accused Stearns (who did not author either of the written evaluations) of discriminating against her on the basis of her sex (female) and of perpetrating a hostile work environment against her. Plaintiff's complaint was investigated by American Airlines' human resources department who concluded that the decision to return Plaintiff to her pre-bid area was due to Plaintiff's performance, not her sex. Although Stearns was found to have used unprofessional language on one occasion, the investigator concluded that none of the incidents identified by Plaintiff (including Stearns' use of the unprofessional language) supported Plaintiff's claim that she had been subjected to a hostile work environment. Plaintiff subsequently filed an EEOC Charge and, following receipt of a Notice of Right to Sue, filed the present lawsuit against American Airlines and the Union. Notwithstanding her filing of the present lawsuit, Plaintiff "loves American Airlines" and continues to work for the company to date.

As shown herein, Plaintiff's disparate treatment claim fails as a matter of law because she has no evidence whatsoever of discrimination based on her sex. Additionally, Plaintiff cannot show that American Airlines' legitimate, non-discriminatory reason for downgrading her was a pretext for unlawful discrimination. Although Plaintiff attempts to draw comparisons between herself and certain male employees who passed their Crew Chief trial periods, those employees are not "similarly situated" to Plaintiff as a matter of law. Similarly, Plaintiff cannot establish the elements of a hostile work environment claim as the conduct complained of was not sex-based and was neither severe nor pervasive. Further, although American Airlines maintained an anti-harassment policy, Plaintiff neither took advantage of the complaint procedures nor reported the alleged harassment *until after* she learned she had failed her trial period.

## II.       STATEMENT OF UNDISPUTED MATERIAL FACTS ("UMF"s)

In accordance with Fed. R. Civ. P. 56 and LCvR 56.1, American Airlines submits the following statement of material facts as to which no genuine dispute exists.

### A.       Plaintiff's Disparate Treatment Claim

#### i.   *Background*

1.       Plaintiff has worked for American Airlines, Inc. at its Tulsa, Oklahoma maintenance base since December 26, 1995. [Exhibit 1, Deposition of Plaintiff Lannette Schneeberg ("Plaintiff Dep.") at 21:10-14] For most of her career at American Airlines, Plaintiff has worked as a mechanic (now referred to as an AMT). [*Id.* at 28:10–29:2 (describing her job history at American Airlines)]

2.       Plaintiff's employment is subject to the terms of the CBA.  [Exhibit 2, CBA]

3.       As provided by the CBA, "[t]he work of an AMT may consist of any and all work generally recognized as AMT work performed on or about an aircraft, including […] the dismantling, disassembly, overhauling, repairing, […] all parts of airplanes, airplane engines, avionics equipment [etc.]." [Ex. 2, CBA at 24].

4.       AMTs and their respective Crew Chiefs are subclassified as either "general maintenance" or "avionics." [Ex. 1, Plaintiff Dep. at 26:6–28:9 (describing the differences between general AMT work and avionics AMT work); Ex. 2, CBA at 23-25; Exhibit 3, Deposition of Rich Orcholski ("Orcholski Dep.") at 13:15-21]

5.       In 2011, Plaintiff began working as an avionics AMT. [Ex. 1, Plaintiff Dep. at 29:8-15]

6.       The CBA governs the bid process, and the filling of any vacancies. [Ex. 2, CBA at 46-47] Pursuant to the CBA, vacancies are filled based on seniority. [*Id.*]

7.       The duties and performance expectations for general AMT Crew Chiefs are set forth in the CBA, which include, *inter alia*, the following:

a.  Being qualified in the duties of her classification and capable of performing those duties;

b.  Demonstrating proper work methods, conducting on-the-job training (OJT) and meetings, and indoctrinating employees in new or revised operational procedures;

c.  Being responsible for the overall performance of her crew, including the timely and satisfactory completion of work assignments;

d.  Ensuring employees assigned to her crew are properly utilized and instructed for the efficient performance of their daily work and that required forms, records, reports, and other paperwork are completed legibly and correctly;

e.  Ensuring management instructions are promptly and correctly complied with;

f.  Working according to FAA and Company regulations and procedures and instructions from her supervisors.

[Ex. 2, CBA at 23-25. *See also* Ex. 3, Orcholski Dep. at 15:5-18 (describing general Crew Chief duties); Exhibit 4, Deposition of Michael Stearns ("Stearns Dep.") at 28:10–29:7 (describing duties of a Crew Chief); Ex. 1, Plaintiff Dep. at 37:8-14 (acknowledging that "know[ing] the flow of the airplane" is a skill that makes a good general Crew Chief)].

9.  "Employees first awarded an AMT Crew Chief vacancy shall hold the job on a trial basis for a period of ninety (90) work days, excluding all classroom training required for their position, in order to demonstrate their ability to perform the required work." [Ex. 2, CBA at 47] The CBA further provides that such employees "will have their performance evaluated prior to the last day of their trial period." [*Id.*] "Employees who fail to meet performance expectations will be returned to their previous bid area and shift." [*Id.*]

10.  The CBA does not require evaluations to be completed by any particular means, nor does it require the full ninety (90) day trial period to lapse before the employee can be returned to his or her previous bid area. [Ex. 2, CBA at 47; Ex. 1, Plaintiff Dep. at 112:22–113:19]

5

*ii. American Airlines' Had a Legitimate, Non-Discriminatory Reason to Demote Plaintiff.*

11.    On April 4, 2022, Plaintiff was awarded a general AMT Crew Chief position in Hangar 6. [Ex. 1, Plaintiff Dep. 37:18-25, 38:1-8, 44:4-6]

12.    At some point in May of 2022, Plaintiff bid for and was awarded a day-shift position, resulting in her being re-assigned to Hangar 5, where she primarily reported to Production Supervisors Chance and Orcholski. [*Id*. at 38:18–39:8, 123:11-20]

13.    Chance and Orcholski, in turn, reported to the managers and senior managers over Hangar 5, including but not limited to Stearns. [Ex. 3, Orcholski Dep. at 18:15-21; Exhibit 6, Deposition of Darrell Chance ("Chance Dep.") at 90:17-20]

14.    During Plaintiff's Crew Chief trial period, Plaintiff was reminded on multiple occasions to start times in FCXP (the software utilized to track maintenance milestones); was late to work; lost her American Airlines badge at least once; failed to submit required turnovers on at least two occasions; was advised more than once about the importance of staying in her work area; was told that she needed to learn the crew chief job function and technical knowledge of the aircraft; and, did not know why certain tasks under her responsibility had not been completed when asked. [Ex. 1, Plaintiff Dep. at 58:1–59:24, 61:15-22; Ex. 6, Chance Dep. at 36:25-38:12; *see also* Ex. 6 at 13:1-9 (describing turnover meetings)]

15.    During one specific turnover meeting, Orcholski asked Plaintiff what her crew would be working on that day. In response, Plaintiff, asked, "what's left?" [Ex. 4, Stearns Dep. at 37:2-12] Stearns, found this interaction to be "concerning." [*Id*. at 52:2-4]

16.    In contrast to Plaintiff, the other Crew Chiefs "knew exactly what their crews were going to do as far as what areas, whether they were cap bends, floorboards, working cables, gear

change, whatever they were working on, they knew what their crew was going to get done for the day or what their […] projected goal for the day was going to be." [*Id.* at 38:6-13]

17.    On June 26, 2022, Plaintiff received an evaluation from Chance which indicated Plaintiff was underperforming in all but one area. The evaluation identified several ways in which Plaintiff's performance failed to meet expectations:

   a.   Errors impair value of work;

   b.   Work requires constant inspection;

   c.   Usually work not finished in time;

   d.   Requires repeated instruction/demonstration by supervision; and,

   e.   Wastes time walking around and talking with others.

The evaluation further noted that Plaintiff was late to work, failed to clock in and out as required, lacked job task knowledge, and lacked dependability because she would leave her work area. [Exhibit 5, June 26, 2022 Evaluation; *see also* Ex. 6, Chance Dep. at 36:3-19, 37:1-24]

18.    Plaintiff did not disagree with any of the statements in the June 26, 2022 evaluation, admitting that she "was still kind of learning the job." [Ex. 1, Plaintiff Dep. at 51:16-23, 72:14-20]

19.    On July 28, 2022, Plaintiff received a second evaluation—this time from Orcholski. The second evaluation noted many of the same issues reflected on the first evaluation. Orcholski noted that Plaintiff "ha[d] made some progress since last conversation but still need[ed] additional guidance, not getting normal [Crew Chief] scope." [Ex. 7, July 28, 2022 Evaluation; Ex. 3, Orcholski Dep. at 98:14-19] Orcholski concluded that Plaintiff "[needed] more time to learn the aircraft flow and how to manage that flow along with FCXP milestones." [Ex. 7, July 28, 2022 Evaluation]

20.    Similarly, Chance felt that Plaintiff was still struggling "to get her crew to be productive [and] get the amount of work done that needed to be done." [Ex. 6, Chance Dep. at 69:5-9.]

21.    The CBA expressly provides that if a supervisor does not believe a Crew Chief has demonstrated her ability to perform the requirements of the Crew Chief position, then the supervisor may demote her. [Ex. 2, CBA at 47; Ex. 1, Plaintiff Dep. at 112:7-12 (agreeing that she could be demoted by a supervisor if she did not meet the expectations of the position)]

22.    Accordingly, on July 28, 2022, in accordance with the CBA, Plaintiff was returned to her pre-bid area as an avionics AMT because she had not demonstrated the ability to perform the requirements of the general AMT Crew Chief position.  [Ex. 7, June 28, 2022 Evaluation; Ex. 8, July 28, 2022 Email]

### iii. Plaintiff's Disparate Treatment Claim Has No Merit.

23.    Plaintiff has no direct evidence of sex discrimination. [Ex. 1, Plaintiff Dep. at 99:4-22]

24.    Plaintiff has no reason to believe Chance would have intentionally discriminated against her and does not think Orcholski would either. [*Id.* at 217:10-15, 218:15]

25.    Plaintiff's discrimination claim is based solely on her subjective belief that she failed her trial period because she is a woman (even though she has seen females pass their Crew Chief trial periods). [*Id.* at 94:11–95:5, 97:14-20 (agreeing that her evidence of discrimination is limited to the fact that she is a female who did not pass her probationary period)].

26.    Plaintiff alleges she was treated less favorably than certain male Crew Chiefs:  Dan Mott ("Mott"), Craig Birdwell ("Birdwell"), Calum Wulfers ("Wulfers"), and Gabriel Navedo Figueroa ("Figueroa"). [*Id.* at 113:21–115:6; 159:13-17]

8

27.    Plaintiff believes Mott, Birdwell, Wulfers and Figueroa are qualified to be Crew Chiefs. [*Id.* at 126:11-16, 138:1-3, 144:20-22, 157:18-20]

28.    The sole basis for Plaintiff's contention that these individuals were treated more favorably is because they did not receive written evaluations and she did. [*Id.* at 133:18-23; 139:9-12, 148:9-13] She does not contend that she was made to do work that was any more difficult or that she was required to meet different expectations. [*Id.* at 130:11-16, 138:12-14, 145:3-5, 158:3-5]

29.    Plaintiff admits she does not know whether these male employees received evaluations by other means (e.g., verbally), nor does she know whether she performed the Crew Chief job to the same level as they did. [*Id.* at 131:9-15, 139:25–140:7, 145:20–146:10, 154:10-15]

30.    Male Crew Chiefs who had similar performance issues as Plaintiff did receive written evaluations and were also downgraded during their trial periods. [Exhibit 9, C. Hatley Evaluation; Exhibit 10, C. Mabrey Evaluation; Ex. 6, Chance Dep. at 19:8–20:7]

### *iv.  The Individuals Plaintiff Has Identified are Not Similarly Situated to Her.*

31.    Mott did not receive a written evaluation during his Crew Chief trial period because he was performing well. [Exhibit 11, Deposition of Sheila Carlson at 26:7-16, 21-25; *see also* Ex. 4, Stearns Dep. at 46:13–25(describing the standard practice regarding evaluations)]

32.    Mott and Plaintiff had different work experience prior to and during their trial periods. [Ex. 1, Plaintiff Dep. at 122:16-21 (acknowledging Mott was assigned to Hangar 5 during the entirety of his probationary period), 125:1–126:3 (acknowledging Mott had been working as a general AMT the entire time that Plaintiff had been in avionics)]

33.     Plaintiff acknowledges that Mott was "further along" than she was; that he "does a good job" as a Crew Chief; and that there are no Crew Chief duties that he did not perform. [*Id.* at 122:11-15, 126:17-24] She cannot remember Mott being late for any Crew Chief shifts and she has no personal knowledge of him not knowing the stage of the aircraft or not understanding the flow of the aircraft. [*Id.* at 242:24–243:2, 7-13]

34.     Birdwell worked in a different hangar during his trial period and had a different scope of work than Plaintiff. [*Id.* at 133:24–135:5, 138:10-11] Plaintiff does not know who Birdwell's supervisors were during his trial period, nor does she know what type of work Birdwell performed as an AMT prior to upgrading to the Crew Chief position. [*Id.* at 136:21–137:2]

35.     With respect to Wulfers, whose Crew Chief trial period took place "maybe a year before" Plaintiff's did, Plaintiff does not know whether she and Wulfers performed the Crew Chief role to the same level; why Wulfers did not receive a written evaluation; who his supervisors were; or where he was assigned during his probationary trial period. [*Id.* at 140:5-11, 142:15-17,25– 143:8]

36.     With respect to Figueroa, Plaintiff has no personal knowledge of his probationary period, including where he worked, how he performed, who his supervisors were, who his managers were, or what specific type of work he performed as Crew Chief or prior to becoming a Crew Chief. [*Id.* at 154:7-23, 155:3-11]

**B.     Plaintiff's Hostile Work Environment Claim Based on Alleged Conduct by Stearns**.

   ***i.     Stearns' Alleged Conduct was Neither Based on Plaintiff's Sex Nor Severe or Pervasive.***

37.     Stearns is the only alleged perpetrator of the hostile work environment Plaintiff alleges she was subjected to. [Ex. 1, Plaintiff Dep. at 168:20-24]

38.    The conduct which Plaintiff alleges constituted a "hostile work environment" consists of the following five (5) alleged incidents allegedly occurring between May 28, 2022 and sometime in 2024: (1) Stearns once asked Plaintiff's Crew Chief where she was; (2) Stearns told Plaintiff and Mott that he did not want anyone "finger fucking their phones" while important people were walking around the hangar; (3) when Plaintiff asked for a box of staples, Stearns asked "what do you need a box of staples for?" then stated "I find it very weird that you need a whole box of staples"; (4) Stearns once held the door open for Plaintiff; and (5) once during a town hall meeting, Plaintiff and Stearns made eye contact and Stearns waved at her. [*Id.* at 159:22–160:4, 161:8–163:1, 169:20-24, 171:12–172:3, 173:10–174:4, 174:14–175:17, 177:18–179:13, 179:22–180:4]

39.    The only one of these incidents that is sexual in any way is Stearns' comment about not wanting anyone to be "finger fucking their phones" while important people were walking through the hangars. [*Id.* at 168:1-17] However, this comment was made to Mott as well and Plaintiff understood Stearns to be talking about people not being on their cellphones. Plaintiff did not consider the statement to be personally directed toward her or based on her sex. [*Id.* at 180:14-23, 182:16-18, 183:5-10, 23-1]

40.    Plaintiff texted her crew the same message in substance, rather than merely passing along the message that they should not be on their cellphones. [*Id.* at 180:24–181:5, 181:21–182:1 (admitting she conveyed the same message that Stearns did and that no one on her crew did not know what the censored word was)]

41.    Stearns has never said anything to Schneeberg about women in the workplace, has never said anything to her about female mechanics, has never made derogatory jokes about women in her presence, has never physically threatened Plaintiff, has never made any sexually suggestive

comments to Plaintiff, and Plaintiff has never heard of Mr. Stearns make sexual comments of any nature other than the one "finger fucking" comment. [*Id.* at 168:8-19, 186:2-9]

### ii. *American Airlines Exercised Reasonable Care to Prevent and Promptly Correct Any Alleged Sexual Harassment or Hostile Work Environment.*

42.     American Airlines has an anti-discrimination/anti-harassment policy, which specifically provides that if someone feels that they have been discriminated against or harassed, or they see it happened to someone else, they "must report it." [Ex. 12, "No Discrimination/No Harassment" Policy].

43.     Plaintiff was aware of how to report harassment under this policy. [Ex. 1, Plaintiff Dep. at 188:20-25]

### iii. *Plaintiff Unreasonably Failed to Take Advantage of Any Preventative or Corrective Opportunities.*

44.     Plaintiff did not report any discrimination or harassment until August 1, 2022 — *after* she was informed that she had failed the Crew Chief trial period and *after* the alleged discrimination described in her Charge of Discrimination took place. [*Id*. at 189:3-10]

### iv. *Plaintiff's Work Environment is Not Abusive.*

45.     Plaintiff does not contend that American Airlines has a pattern or practice of discriminating against individuals on the basis of their sex. [*Id.* at 211:15-22]

46.     Plaintiff loves American Airlines and has not looked for any jobs outside of American Airlines. [*Id.* at 231:23–232:3, ("like I said, I love American Airlines")]

## III.     ARGUMENT AND AUTHORITIES

### A.  The Standard for Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). American Airlines' burden, as the moving party, may be met by "pointing out to the district court that there is an

absence of evidence to support [Plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to Plaintiff "to identify specific facts that show the existence of a genuine issue of material fact." *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 484 (10th Cir. 1995). Although the Court may make reasonable inferences in the light most favorable to Plaintiff, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Thus, to defeat summary judgment, Plaintiff "must present sufficient evidence in specific, factual form for a jury to return a verdict" in her favor. *Bacchus Indus., Inc. v. Arvin Indus.*, 939 F.2d 887, 891 (10th Cir. 1991). Where the evidence of the non-moving party is "merely colorable," summary judgment in favor of the non-moving party is proper. *Anderson*, 477 U.S. at 249-52.

**B.  Plaintiff's Disparate Treatment Claim Fails as a Matter of Law.**

Because Plaintiff does not have direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies to her disparate treatment claim. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under this framework, Plaintiff bears the initial burden of establishing a prima facie case of discrimination, namely that: (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009). If Plaintiff establishes the elements of a prima facie case, then the burden shifts to American Airlines to articulate a "legitimate, nondiscriminatory reason for the adverse employment action." *Bennett v. Windstream Comm'cns, Inc.*, 30 F. Supp. 3d 1243, 1257 (N.D. Okla. 2014) (quoting *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009)). Once American Airlines does so, the burden shifts back to

Plaintiff to show that American Airlines' legitimate non-discriminatory reason was merely pretext for illegal discrimination. *Turner,* at 1142-43. Notwithstanding the burden-shifting framework, Plaintiff retains, at all times, "the ultimate burden of persuading the court that she has been a victim of intentional discrimination." *Texas Dep't. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981).

### i.   *Plaintiff Cannot Establish the Third or Fourth Elements of a Prima Facie Case.*

To survive summary judgment, Plaintiff "must initially raise a genuine issue of material fact on *each* element of the prima facie case." *Bennett*, 30 F. Supp. 3d at 1253-54 (emphasis in original) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). "While the elements of a prima facie case under the *McDonnell Douglas* framework are neither rigid nor mechanistic, their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in [the] plaintiff's favor." *Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008). "In the absence of facts tending to establish this initial inference, [a] plaintiff is not entitled to the presumption of discrimination and a defendant is not required to defend against the charge." *Id.*

Here, the undisputed material facts demonstrate that Plaintiff cannot establish the third and fourth elements of a prima facie case of discrimination based on a disparate treatment theory.

### a.   <u>Plaintiff was not qualified for the general AMT Crew Chief position.</u>

Plaintiff cannot establish that she was qualified for the general AMT Crew Chief position because she was unable to demonstrate the ability to meet the requirements of the position. The undisputed material facts demonstrate that roughly sixty (60) workdays into her trial period, Plaintiff received an evaluation reflecting she was underperforming in all but one area. (UMF 17) Plaintiff did not disagree with that evaluation, admitting that she "was still kind of learning the job." (UMF 18) In fact, Plaintiff admits that during her trial period she had to be reminded to start times in FCXP; was late on occasion; lost her American Airlines badge; failed to turn in a turnover

on at least two occasions; submitted a turnover with multiple items duplicated; did not know why certain tasks for which she was responsible had not been completed when asked; was advised more than once about the importance of staying in her work area; and was informed that she needed to learn the job functions and the aircraft. (UMF 14) As of July 28, 2022, many of these *same issues* remained uncorrected, as observed by Chance (who Plaintiff has no reason to believe would discriminate against her) and Orcholski (who Plaintiff does not believe would discriminate against her either). (UMFs 19, 20, 24)

Pursuant to the CBA, Plaintiff needed to fulfill all requirements of the general AMT Crew Chief position within the trial period to remain in the position. Yet, she was either unwilling or unable to do so. Thus, the undisputed material facts demonstrate that Plaintiff was not qualified for the general AMT Crew Chief position and therefore she cannot establish a prima facie case of discrimination.

> **b. <u>Plaintiff cannot establish she was treated less favorably than others in her position</u>**.

To satisfy the fourth element of the *McDonnell Douglas* prima facie test, Plaintiff must show that she was treated less favorably than employees not in her protected class. *Bennett*, 30 F. Supp. 3d at 1256. This requires Plaintiff coming forward with *admissible* evidence of disparate treatment—her belief that she was discriminated against is insufficient. *Id.* (emphasis in original).

Here, Plaintiff has failed to produce any evidence that she was treated less favorably than others in her position. Her claim is premised on the fact that she received written evaluations, and four male employees did not. However, the undisputed material facts demonstrate that written evaluations are typically only performed where there are performance issues that need to be addressed. (UMF 31) Accordingly, Plaintiff cannot rely on this distinction to establish unfavorable treatment for purposes of establishing a prima facie case because it is well recognized that job

performance is a legitimate basis for differential treatment. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002) ("Title VII does not protect an employee from reprimands for disappointing progress or poor work performance without evidence suggesting that the employee's sex played a role in those reprimands.").

Critically, Plaintiff has not produced any evidence or examples of male Crew Chiefs exhibiting the same performance issues Plaintiff had but who did not receive written evaluations and/or passed their trial periods. In contrast, Plaintiff agrees that the male Crew Chiefs who passed their trial periods deserve to be Crew Chiefs. (UMF 27) Plaintiff's subjective belief that she too deserves to be a Crew Chief is insufficient to survive summary judgment—*especially* considering the undisputed material fact that male employees with performance issues similar to Plaintiff's *did* receive written evaluations and *also* failed their Crew Chief trial periods. (UMF 30)

Not only does Plaintiff ignore the fact that male employees have failed their Crew Chief trial periods, but, by Plaintiff's own admission, she has no actual evidence suggesting her demotion was based on her sex. (UMFs 23-25) Plaintiff was not made to do work that was any more difficult nor was she required to meet different expectations. (UMF 28) Her discrimination claim is simply based on her personal feelings, assumptions, and refusal to consider that her demotion was the result of her well-documented and undisputedly poor job performance. (UMFs 14-22) This is insufficient to establish a prima facie case of discrimination.

### ii. *American Airlines Has Articulated a Legitimate, Nondiscriminatory Reason for Its Action.*

In the event the Court finds that Plaintiff can establish a prima facie case of discrimination, the burden moves to American Airlines to "articulate some legitimate, nondiscriminatory reason" for demoting Plaintiff to her prior position as an avionics AMT. *McDonnell Douglas*, 411 U.S. at 802-03; *Bennett*, 30 F. Supp. 3d at 1257. American Airlines' burden in this respect is "exceedingly

light," requiring only production—not persuasion. *Mauldin v. Driscoll*, 136 F.4th 984, 995 (10th Cir. 2025) (internal quotations and citations omitted).

Here, American Airlines has clearly articulated a legitimate, nondiscriminatory reason for downgrading Plaintiff from the AMT Crew Chief position: she was not meeting the legitimate expectations of the Crew Chief position, as noted by two different supervisors. (UMFs 19-22)

### iii.  *Plaintiff Cannot Show Pretext.*

Since American Airlines has identified a legitimate, nondiscriminatory reason for its action, the burden shifts to Plaintiff to "show there is a genuine dispute about whether the proffered explanation was pretext for discrimination." *Bennett*, 30 F. Supp. 3d at 1258 (citing *Lobato v. New Mexico Env't Dept.*, 733 F.3d 1283, 1289 (10th Cir. 2013)). In conducting a pretext analysis, it is not the Court's role to second guess the employer's business decision. *See Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (assertion that Plaintiff was equally or more qualified than other individual is insufficient to show pretext). Rather, Plaintiff must produce sufficient evidence that American Airlines "shifted rationales; that the proffered justification was false, incoherent, or contradictory; or that similarly-situated employees were treated differently" such that a rational jury could find that American Airlines' stated reason (Plaintiff's poor job performance) is unworthy of belief. *Gerovic v. City and Cty. of Denver*, No. 22-1148, 2023 WL 2293518, at *9 (10th Cir. Mar. 1, 2023) (unpublished) (citing *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1197 (10th Cir. 2011)). "Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Morgan*, 108 F.3d at 1323.

Plaintiff has no evidence to establish pretext. Plaintiff's efforts to draw comparisons between herself and certain male Crew Chiefs who passed their trial periods fall far short of the

bar to defeat summary judgment because Plaintiff was not similarly situated to such individuals in all relevant respects. Instead, she relies solely on her own belief that she was as good of a Crew Chief as her comparators were, which is patently insufficient to establish pretext.

### a.  Plaintiff has not identified any similarly situated employees.

In order to establish pretext by showing that similarly situated employees were treated differently, Plaintiff must establish that "she was similarly situated to [her comparators] in all relevant respects." *Gerovic*, at *12 (citing *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)). To be deemed "similarly situated", the employees must: (1) share a supervisor; (2) be subject to the same standards; and (3) engage in comparable conduct. *Overfield v. Kansas*, No. 23-3057, 2024 WL 1611473, at *5 (10th Cir. Apr. 15, 2024) (citing *McGowan*, 472 F.3d at 745). "A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *McGowan*, 472 F.3d at 745 (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)). Importantly, "[n]ot every difference in treatment, of course, will establish a discriminatory intent." *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1232 (10th Cir. 2000).  Differences in treatment that are "explained by a non-discriminatory motive will not sustain a claim of pretext." *Id.*

Here, Plaintiff claims she was treated differently than certain male counterparts because she was given a written evaluation and they were not. (UMF 28) However, as demonstrated by the undisputed material facts, Plaintiff cannot establish that any of the four comparators were similarly situated to her "in all relevant respects" as the Tenth Circuit requires. (UMFs 29, 31-36) Only one of the male comparators (Mott) had the same supervisors as Plaintiff.

18

(UMFs 34-36) Thus, Plaintiff cannot be deemed "similarly situated" to Wulfers, Birdwell or Figueroa as a matter of law.

As for Mott, the undisputed material facts demonstrate that he did not receive a written evaluation because he did not have any performance issues. (UMF 31) This fact alone undermines any allegation of pretext. Moreover, Mott and Plaintiff had different work backgrounds. Unlike Plaintiff who worked in avionics for the decade prior to becoming a general AMT Crew Chief, Mott had worked solely as a general AMT. (UMF 31) Thus, Mott entered the Crew Chief role with a knowledge and experience base that Plaintiff simply did not have. Further, unlike Plaintiff, Mott did not have a record of showing up late, understood the flow of the aircraft, and was not known for being outside of his work area. (UMFs 31, 33)

In sum, Plaintiff cannot show pretext by pointing to any of these alleged male comparators.

**b.** __Plaintiff's subjective beliefs as to her job performance are insufficient.__

Plaintiff's subjective belief that she performed as well as other Crew Chiefs is insufficient to defeat summary judgment. *See, e.g., Branson*, 853 F.2d 768, 772; *Gerovic*, at \*9 ("[plaintiff's] subjective beliefs about her own job performance do not raise a genuine issue of material fact regarding the City's stated reasons for her termination") (citing *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1179 (10th Cir. 2006)); *Fuller v. Seagat Tech., LLC*, 651 F. Supp. 2d 1233, 1244 (D. Colo. 2009) (Plaintiff's own feelings regarding his performance are largely irrelevant to Defendant's proffered reason for termination."); *Xu v. Denver Pub. Schs., Sch. Dist. No. 1*, No. 23-1079, 2024 WL 448290, at \*5 (10th Cir., Feb. 6, 2024) ("Although [plaintiff] believes that he was qualified for and satisfactorily performing his job, his subjective belief is not the relevant consideration.").

Tellingly, Plaintiff does not claim that any of her identified comparators failed to meet any of the requirements of the Crew Chief position but were nonetheless permitted to remain in the position. In fact, Plaintiff admits that all four male employees are deserving of the Crew Chief role—she merely wants this Court to improperly second-guess American Airlines' business judgment and find (without any evidence) that she too deserves to be a Crew Chief. The relevant legal authorities overwhelmingly make clear that the Court cannot do so.

Accordingly, summary judgment should be granted for American Airlines on Plaintiff's disparate treatment claim because Plaintiff has failed to make a prima facie case of discrimination; and, even if she could establish such a case, American Airlines has established a legitimate and non-discriminatory reason for its decision to return Plaintiff to her prior bid area. Plaintiff has no evidence to establish that American Airlines' legitimate and non-discriminatory reason was a pretext for illegal discrimination. Indeed, Plaintiff cannot and has not identified any similarly situated employee to support her claim. Plaintiff's claim is solely based on her subjective belief that discrimination must have occurred because she was demoted, even though she was made aware throughout her trial period as AMT Crew Chief that she was not meeting expectations. Importantly, Plaintiff was not demoted because she received a written evaluation. Rather, she was demoted because of her poor performance. Plaintiff received written evaluations because of her poor performance. Thus, American Airlines is entitled to judgment as a matter of law on Plaintiff's disparate treatment claim.

**C. Plaintiff's Hostile Work Environment Claim Fails as a Matter of Law**.

To establish a sexually hostile work environment, Plaintiff must prove: (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a

term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Tilghman v. Kirby*, No. CIV-13-73-D, 2015 WL 5472498, at *4 (W.D. Okla. Sept. 16, 2015) (citing *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007)). To survive summary judgment, Plaintiff "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Id.* (citations and quotations omitted).

Here, Plaintiff cannot prove the third and fourth elements of her claim. The undisputed material facts demonstrate that none of the alleged harassing incidents were based on sex, nor were they either severe or pervasive. Accordingly, Plaintiff's hostile work environment claim fails as a matter of law.

### i. *Plaintiff's Hostile Work Environment Claim Fails Because the Alleged Conduct was Not Based on Sex.*

To maintain a hostile work environment claim under Title VII, Plaintiff must demonstrate that the allegedly hostile conduct was based on sex. *See Tilghman,* at *4.

Yet, Plaintiff does not allege a single incident that she considered to be sex-based that was directed to her. (UMFs 38-39) The only *arguably* sex-related comment Plaintiff complains of is the statement Stearns made, advising Plaintiff and Mott that he did not want any employees "finger fucking their phones" while important people were walking around the hangars. (UMF 39) However, Plaintiff admitted she understood Stearns to have been referring to employees using their cell phones and even repeated that same message to her own subordinates, only replacing the word "fucking" with "[censor]." (*Id.*)

Further, Plaintiff testified that the "finger fucking their phones" comment was the *only* thing that Stearns has said to her that is even remotely sexually suggestive in nature. (UMF 41) Thus, regardless of whether Stearns' conduct towards Plaintiff was harassing, the undisputed

material facts demonstrate that it was not based on sex. Accordingly, judgment in favor of American Airlines on Plaintiff's hostile work environment claim is proper.

> ### ii.    *Plaintiff's Hostile Work Environment Claim Fails Because the Alleged Conduct Was Neither Severe nor Pervasive.*

"Title VII does not establish 'a general civility code' for the workplace." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (internal citations and quotations omitted). Thus, offhand comments and isolated incidents (unless extremely serious) will not give rise to a hostile work environment claim. *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S 775, 788 (1998)).

### a.    <u>The complained of conduct was not pervasive.</u>

To demonstrate a pervasively hostile work environment, Plaintiff must present admissible evidence that she was subjected to a steady barrage of offensive comments. *Morris, 666 F.3d* at 666; *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1543 (10th Cir. 1995). As demonstrated by the following Tenth Circuit Court of Appeals cases wherein the court upheld summary judgments in favor of the employers on hostile work environment claims, the requirement of a "steady barrage of opprobrious [sexual] comments" is an extremely high standard.

In *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257 (10th Cir. 1998), the Tenth Circuit affirmed summary judgment in favor of the employer when two plaintiffs alleged that their supervisor engaged in the following conduct:

1) Intentionally gave hotel clerks the impression that he and one of the plaintiffs were to share a room;
2) When one of the plaintiffs was on a business trip with the supervisor, he asked her if women have wet dreams;
3) Took one of the plaintiffs to Hooters;
4) Insisted that one of the plaintiffs work in his hotel room despite her protests and request to work in her own room;
5) Told one of the plaintiffs that her bra strap was showing, and then said that "he kind of liked it that way;
6) Told a male employee that one of the female employees "allowed him to get in her drawers any time";

22

7) Asked one of the plaintiffs what she was wearing under her dress and laughed when she said she did not appreciate the comment;

8) Told the plaintiffs that the roof of a particular mall was shaped like a woman's breasts;

9) Followed one of the plaintiffs constantly when she got up to go to the break room or the bathroom;

10) Stood and stared at one of the plaintiffs while she was working;

11) Told a female assistant to "bring your buns over here";

12) Leaned against one of the plaintiffs and repeatedly tried to look down her blouse;

13) Repeatedly referred to the assistants as "gals" rather than by name when introducing them to employees at other banks on travel, despite their requests that he stop doing so; and

14) Needlessly touched both plaintiffs on many occasions and startled them by repeatedly sneaking up from behind, grabbing their shoulders while loudly saying their name.

*Penry*, 155 F.3d at 1260-61. In examining the totality of the circumstances, including the context in which the alleged incidents occurred, the court was unable to conclude that a rational jury could find the plaintiff's workplace was permeated with discriminatory intimidation. *Id.* at 1263 (affirming summary judgment in favor of the employer).

Similarly, in *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355 (10th Cir. 1997), the plaintiff alleged the following incidents:

1) Her supervisor said to her, "Shelley, you really need to undo that top button";

2) When an unknown person asked, "Hey, are the girls going down to aerobics," the supervisor replied, "Hey, you can't call them girls. You have to call them ladies."

3) Her supervisor brought up the subject about women and PMS in front of her and said that you know how they are at that time of the month;

4) At plaintiff's wedding reception, her supervisor put his arm around her and looked down her dress; when she looked at him, he said, "well, you got to get it when you can,"; and,

5) In response to a discussion about 'neck chains," her supervisor said, "neck chains! That sounds kind of kinky."

*Sprague*, 129 F.3d at 1366. In upholding summary judgment in favor of the employer, the Tenth Circuit held that the five separate incidents occurring over a sixteen-month period did not create a hostile or abusive work environment in violation of Title VII. *Id.*

23

Here, Plaintiff has identified a total of five unrelated incidents, of which just one was *arguably* sex-related, occurring over at least a two-year period in support of her claim of a hostile work environment. (UMFs 38-39) No rational jury could find that the allegedly hostile conduct was "pervasive."

### b. **The complained of conduct was not severe.**

Where only isolated incidents are alleged, the conduct must be "especially egregious or extreme" to constitute a hostile work environment. *Morris*, 666 F.3d at 667 (collecting cases). In the instant case, none of the incidents complained of could reasonably be considered "severe." Stearns has never physically threatened Plaintiff and has never made even a single derogatory or sexually suggestive comment to her. (UMF 41) Rather, Plaintiff complains of conduct that is objectively normal and arguably polite, such as Stearns holding the door open for her and waving hello upon making eye contact. Thus, summary judgment should be entered in favor of American Airlines on Plaintiff's hostile work environment claim.

### iii. *Plaintiff's Hostile Work Environment Claim Fails Due to American Airlines' Faragher-Ellerth Defense.*

American Airlines can only be liable for a claim of hostile work environment "if it knew, or should have known, about the hostile work environment and failed to respond in an appropriate manner." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1230 (10th Cir. 2022). Accordingly, even if Stearns' alleged conduct was sufficient to have created a hostile work environment (which American Airlines denies), Plaintiff cannot recover against American Airlines on this claim because American Airlines exercised reasonable care to prevent and promptly correct any alleged sexually harassing behavior and Plaintiff unreasonably failed to take advantage of those procedures. *See Faragher*, 524 U.S. 775 at 806 (establishing affirmative defense to a plaintiff's hostile work environment claim).

Proof that an employer promulgated an anti-harassment policy with a complaint procedure is demonstrative that an employer has taken reasonable care to prevent harassment. *Conatzer v. Medical Professional Bldg. Servs., Inc.*, 255 F.Supp.2d 1259, 1268 (N.D. Okla. 2003). And, "proof that an employee failed to use any complaint procedure provided by the employer 'will normally suffice to satisfy the employer's burden under the second element of the defense." *Id.* at 1270 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 742 (1998)).

Here, the undisputed material facts show that American Airlines had an anti-harassment policy in place at the time the alleged conduct occurred. (UMF 42) Such policy contained procedures to report alleged harassment. The policy states if someone feels they have been discriminated against or harassed, or if they see it happening to someone else, they "must report it." (*Id.*) Plaintiff was aware of American Airlines' policies relating to harassment and knew how to report instances of harassment. (UMF 43) Yet, Plaintiff took no action to report any of Stearns' allegedly hostile conduct at the time; it was only *after* she was informed by Orcholski that she had not passed her probationary period and would be returned to her pre-bid area that she reported it. (UMF 44) Thus, to the extent Plaintiff suffered any adverse employment action as a result of Stearns' allegedly hostile conduct (which American Airlines fervently denies), the fault lies with Plaintiff, *not* American Airlines. Plaintiff's hostile work environment claim fails as a matter of law.

## CONCLUSION

For the above and foregoing reasons, American Airlines respectfully requests the Court grant summary judgment in its favor on all of Plaintiff's claims.

Respectfully Submitted,

*/s/ Hayley N. Stephens*

David R. Cordell, OBA #11272
Hayley N. Stephens, OBA #32515
Ashlyn Frix, OBA #35605
CONNER & WINTERS, LLP
4100 First Place Tower
15 East Fifth Street
Tulsa, OK 74103
(918) 586-5711
dcordell@cwlaw.com
hstephens@cwlaw.com
afrix@cwlaw.com

*Attorneys for American Airlines, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of September 2025, a true and correct copy of the above and foregoing instrument was served upon the following ECF registrants:

Charles Battle
1415 NW 43rd Street
Oklahoma City, Oklahoma 73118

*Attorneys for Plaintiff*

Steven R. Hickman
1700 Southwest Boulevard
Tulsa, Oklahoma 74107

*Attorney for Transport Workers Union of America AFL-CIO Local 514*

*/s/ Hayley N. Stephens*